UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KRESICH, | Case No. 15-cv-05801-MEJ |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, | Re: Dkt. No. 16 |
| Defendant. | |

## INTRODUCTION

Plaintiff John Kresich ("Plaintiff") asserts a claim for intentional infliction of emotional distress ("IIED") arising from Defendant Metropolitan Life Insurance Company's ("Defendant") conduct during the processing of his claim for long-term disability benefits. Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's Complaint is preempted under section 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). Dkt. No. 16. Plaintiff filed an Opposition (Dkt. No. 19), and Defendant filed a Reply (Dkt. No. 20). The Court finds this matter suitable for disposition without oral argument and VACATES the April 14, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendant's Motion for the following reasons.

## BACKGROUND

Plaintiff is the former Vice President Controller of Kaiser Permanente. Compl. ¶ 10, Dkt. No. 1-1. Through his employer, Plaintiff entered into insurance contracts with Defendant for disability income coverage effective April 1, 2009. *Id.* ¶ 8. Defendant issued Group Policy Number 95910-1-C (the "Plan"), which Plaintiff attached as Exhibit A to his Complaint. Plaintiff suffers from severe chronic back pain that has worsened over time until he could no longer continue working on March 12, 2014. *Id.* ¶¶ 14, 15. As a result of his condition, Plaintiff experiences severe, chronic back pain that is debilitating and prevents him from sitting or

United States District Court
Northern District of California

United States District Court
Northern District of California

1    concentrating for extended periods of time.  *Id.* ¶ 17.  Plaintiff's physicians have treated him with

2    narcotics that cause him serious impairing side effects, including severe fatigue, cognitive

3    impairments, drowsiness, disorientation, agitation, and lack of concentration.  *Id.* ¶ 18.

4              On July 17, 2014, Plaintiff met with Dr. Abraham Boskovitz to discuss potential surgery

5    options to treat his back.  *Id.* ¶ 20.  However, Dr. Boskovitz discouraged surgery because in

6    Plaintiff's case such surgery would be risky and of uncertain value.  *Id.*  Thus, on September 12,

7    2014, Plaintiff made a claim for Total Disability benefits under the Plan.  *Id.* ¶ 21.  Plaintiff

8    alleges Defendant investigated his claim and determined he was entitled to Total Disability

9    benefits, but it "repeatedly engaged in extreme and outrageous conduct with the aim of forcing

10   [him] to drop his claim and return, in pain, to work." *Id.* ¶ 24.  This conduct included ignoring his

11   correspondence, demanding time extensions, intentionally delaying the scheduling of Independent

12   Medical Examinations ("IMEs"), intimidating Plaintiff to attend multiple IMEs that Defendant

13   knew would cause him pain and emotional distress, falsely alleging that Plaintiff was lying about

14   and exaggerating his physical disability, and purposely misstating  and misrepresenting statements

15   made by Plaintiff and his treating physicians.  *Id.* ¶ 25.

16             Plaintiff filed the present Complaint on July 13, 2015 in the San Francisco Superior Court,

17   alleging one cause of action for IIED.  *Id.* ¶¶ 26-32.  Plaintiff alleges Defendant "knew of his

18   physical disabilities and weak emotional state," yet it engaged in extreme and outrageous conduct

19   by unnecessarily prolonging review of his claim and causing severe mental distress.  *Id.* ¶¶ 28-29.

20   Plaintiff contends Defendant intentionally sought to force him to "drop his disability claim, return

21   to work in pain, and/or accept a smaller settlement than he is rightly entitled" under the Plan.  *Id.* ¶

22   29.

23             Defendant removed the case to this Court on December 17, 2015.  Dkt. No. 1.  It now

24   moves for judgment on the pleadings, arguing that Plaintiff's Complaint is preempted under

25   ERISA.  Mot. at 1.

26                                        **LEGAL STANDARD**

27             Federal Rule of Civil Procedure ("Rule") 12(c) provides that "[a]fter the pleadings are

28   closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

                                                       2

1    Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of

2    material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*

3    *v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

4          "Analysis under Rule 12(c) is substantially identical to analysis under [Rule 12(b)(6)]

5    because, under both rules, a court must determine whether the facts alleged in the complaint, taken

6    as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th

7    Cir. 2012) (internal quotation marks omitted).  "Dismissal under Rule 12(b)(6) is appropriate only

8    where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

9    legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

10   While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6)

11   motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins*

12   *v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations

13   omitted).  A claim is facially plausible when it "allows the court to draw the reasonable inference

14   that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15   (2009) (internal quotation marks omitted).

16          In considering whether a claim satisfies this standard, the court must "accept factual

17   allegations in the complaint as true and construe the pleadings in the light most favorable to the

18   nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

19   2008).  However, "conclusory allegations of law and unwarranted inferences are insufficient to

20   avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted).

21   "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too

22   speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076

23   (9th Cir. 2013).

24          "Where a court grants . . . a motion for judgment on the pleadings under Rule 12(c), leave

25   to amend should be freely given if it is possible that further factual allegations will cure any

26   defect." *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013).

27                                         **DISCUSSION**

28          Defendant argues "Plaintiff's complaint is a bald attempt to evade ERISA preemption by

United States District Court
Northern District of California

3

1    affixing state law labels to what is obviously an ERISA case." Mot. at 4.  It maintains his IIED

2    claim is "inextricably intertwined" with ERISA claims handling and is therefore preempted.

3        Plaintiff does not dispute that the Plan at issue is governed by ERISA.  Compl. ¶ 11.

4    However, he argues his IIED claim "invokes legal rights and duties wholly independent from

5    ERISA." Opp'n at 10.  He contends Defendant's conduct is far outside the scope of ordinary

6    insurance claim activity because Defendant "insulted, harassed, and ignored [him] for months on

7    end with the intent to cause him mental distress and potentially fatal physical injury." *Id.* at 15.[1]

8    **A.    ERISA Preemption Principles**

9        ERISA provides a uniform regulatory regime over employee benefit plans. *Aetna Health*

10   *Inc. v. Davila*, 542 U.S. 200, 208 (2004).  "To this end, ERISA includes expansive pre-emption

11   provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee

12   benefit plan regulation would be 'exclusively a federal concern.'" *Id.*  As the Supreme Court

13   explained, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of

14   others under the federal scheme would be completely undermined if ERISA-plan participants and

15   beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at

16   208-09 (noting that "Congress did *not* intend to authorize other remedies that it simply forgot to

17   incorporate expressly." (emphasis in original)).  In particular, "any state-law cause of action that

18   duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

19   congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at

20   209; *Chamblin v. Reliance Standard Life Ins. Co.*, 168 F. Supp. 2d 1168, 1179 (N.D. Cal. 2001)

21   (state law claims are "preempted where they would offer an alternative enforcement mechanism to

22   ERISA.") (internal quotations and citation omitted).

23       "There are two strands to ERISA's powerful preemptive force." *Cleghorn v. Blue Shield*

24   *of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).  First, ERISA preempts state laws that "relate to" an

25   ERISA plan. *Id.*; 29 U.S.C. § 1144(a).  Though the limiting principle in this expansive language

26

27   _____

     [1] Plaintiff also argues at length that his IIED claim is valid because it meets all required elements.
28   Opp'n at 7-10.  However, whether Plaintiff meets the elements of an IIED claim is not at issue—
     Defendant's Motion focuses solely on preemption.

United States District Court
Northern District of California

can be difficult to identify, precedent teaches that the statute "is to be read practically, with an eye toward the action's actual relationship to the subject plan." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)); *see also Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521-22 (9th Cir. 1993) (explaining that ERISA "regulates certain *relationships*" and presumptively preempts laws affecting those relationships but not other relationships "where a plan operates just like any other commercial entity" (emphasis in original)). Thus, a "state law claim is preempted by ERISA if it has a 'connection with' or a 'reference to' an ERISA-governed benefit plan." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). "Stated another way, where 'the existence of an ERISA plan is a critical factor in establishing liability' under a state cause of action, the state law claim is preempted." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990) (brackets omitted)). "ERISA's preemption provision functions 'even when the state action purports to authorize a remedy unavailable under the federal provision.'" *Id.* at 1190-91 (quoting *Ingersoll-Rand*, 498 U.S. at 144 (brackets omitted)).

The second strand of ERISA preemption bars state-law causes of action that fall within the scope of ERISA's "comprehensive scheme of civil remedies to enforce ERISA's provisions . . . even if those causes of action would not necessarily be preempted" by § 1144(a). *Cleghorn*, 408 F.3d at 1225. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*, 542 U.S. at 209. Said another way, ERISA preempts state-law claims that merely would supply "alternative enforcement mechanisms" for ERISA provisions. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 982 (9th Cir. 2001). Accordingly, ERISA plaintiffs "cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort." *Id.* at 983. "The Ninth Circuit has applied a 'but for' standard to assess the relationship between the harm alleged and the ERISA-governed plan for purposes of determining whether a plaintiff is seeking such an alternate enforcement mechanism." *Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 871 (N.D. Cal. 2004) (citing *Dishman*, 269

United States District Court
Northern District of California

F.3d at 983).  "To avoid ERISA preemption, [a plaintiff's] claim must exist even without the defendants' failure to pay her benefit."  *Id.*  The *Dishman* court found ERISA did not preempt a claim for invasion of privacy stemming from surveillance by a private investigator hired by a defendant ERISA plan to verify the plaintiff's disability claim, because the alleged intrusions on plaintiff's privacy did not "depend on or derive from his claim for benefits in any meaningful way."  269 F.3d at 983.  Under *Dishman*, the fact that the conduct at issue allegedly occurs in the course of administering an ERISA plan does not necessarily result in preemption: where the state-law claim has only a "tenuous, remote, or peripheral connection" to the ERISA plan, it is not preempted.  269 F.3d at 984 (quoting *Travelers*, 514 U.S. at 661); *accord Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 191-92 (4th Cir. 2002) ( "[T]he simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary.").

**B.      Application to the Case at Bar**

Defendant raises its challenge under the second strand of ERISA preemption.  It argues there can be no dispute that Plaintiff's action is for the alleged improper processing of a claim for benefits under an insured employee benefit plan and that his IIED claim therefore springs from the handling and disposition of his claim.  Mot. at 7-8.  However, as noted above, the fact that the alleged conduct occurred in the course of administering an ERISA plan does not automatically result in preemption.

As a preliminary matter, there is no allegation in Plaintiff's Complaint that his benefits have been granted or denied, and Plaintiff's suit is not based on the processing of his claim.  Courts have denied preemption where the common law or state law claims are too tangentially related to the administration of the employee benefits plans.  For example, in *Dishman*, the Ninth Circuit found that ERISA did not preempt plaintiff's state law claim for tortious invasion of privacy against a benefits plan administrator.  269 F.3d at 983-84.  The defendant plan administrator hired investigative agencies to investigate plaintiff's claim for long-term disability benefits, and plaintiff alleged that the investigators used methods to elicit information about him that invaded his privacy.  *Id.* at 979-80.  The Ninth Circuit held that "the fact that the conduct at

6

issue allegedly occurred in the course of [defendant's] administration of the plan does not create a relationship sufficient to warrant preemption," because Congress's purpose in enacting 29 U.S.C. § 1144(a) "was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Id.* at 984. The court reasoned that, if this were the case, "a plan administrator could 'investigate' a claim in all manner of tortious ways with impunity." *Id.* The court also noted that, unlike in other cases where preemption was found, plaintiff's tort claim did not depend on or derive from his claim for benefits, meaning that his claim for damages for invasion of privacy remained regardless of whether his claim for benefits was paid. *Id.* at 983; *see also Providence Health*, 385 F.3d at 1172 ("In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival."). Thus, for preemption to occur, Defendant must show that "there is no other independent legal duty that is implicated by a defendant's actions." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009). In other words, the Court must determine whether Plaintiff's IIED claim "relies on a legal duty that arises independently of ERISA" and that "would exist whether or not an ERISA plan existed." *Id.* at 950.

Even if Defendant has approved or denied Plaintiff's claim, it exists outside of the claim process. Plaintiff alleges Defendant ignored his correspondence, demanded time extensions, intimidated him into attending multiple IMEs and often delaying them, accused him of lying about and exaggerating his disability, and purposely misstated and misrepresented statements made by Plaintiff and his treating physicians. Compl. ¶ 25. He further alleges Defendant "knew of his physical disabilities and weak emotional state," yet it prolonged review of his claim to force him to "drop his disability claim, return to work in pain, and/or accept a smaller settlement than he is rightly entitled" under the Plan. *Id.* ¶¶ 28-29.

Following *Dishman*, other courts have held that a claim for IIED based on alleged hostile conduct during an insurance investigation was not preempted by ERISA. In *Daie v. The Reed Group., Ltd.*, 2015 WL 6954915 (N.D. Cal. Nov. 10, 2015), the plaintiff alleged he was

United States District Court
Northern District of California

wrongfully denied disability benefits under his policy and that the policy administrator repeatedly engaged in extreme and outrageous conduct with the aim of forcing plaintiff to drop his claim and return to work. *Id.* at *1. Plaintiff brought one claim for IIED. *Id.* at *2. Although the conduct occurred in connection with the plaintiff's claim, the court held that the defendants had a "duty not to engage in the alleged tortious conduct existed independent of defendants' duties under the ERISA plan." *Id.* at *3. The court noted that the complaint alleged "such tortious conduct as falsely accusing plaintiff of 'lying' about his disability, urging plaintiff to take experimental medications, inducing plaintiff to increase his medications, forcing plaintiff 'to undergo a litany of rigorous medical examinations without considering their results,' and pressuring plaintiff 'to engage in further medical testing that it knew would cause . . . pain, emotional distress and anxiety.'" *Id.* The court found that "[t]hese allegations are based on events that involved harassing and oppressive conduct," and that such "actions implicate an independent legal duty." *Id.*

In *Sarkisyan v. CIGNA Healthcare of California, Inc.*, 613 F. Supp. 2d 1199 (C.D. Cal. 2009), the plaintiffs sued the defendant plan administrators after they denied coverage for their minor daughter's liver transplant. *Id.* at 1200-01. Plaintiffs brought a claim for IIED, in part based on "verbal abuse" they suffered at the hands of CIGNA employees and one CIGNA employee that directed "a lewd hand gesture" toward them. *Id.* at 1206. The court found plaintiffs' IIED claim was not preempted because "it does not arise out of CIGNA's denial of coverage, nor does its resolution depend upon the Court's interpretation of the Plan's terms." *Id.*

In *Barker v. The Hartford Life and Accident Insurance Co.*, 2007 WL 2192298 (N.D. Tex. May 18, 2007), the plaintiff alleged that insurance investigators "attacked" his credibility, suggested he was lying about his illness, and asked "belittling questions" in an "effort to 'shame [the plaintiff] into returning to work.'" *Id.* at *3 (quotation omitted). The court found the plaintiff had the right to be "free from" such treatment and that such conduct "exists independently" of plaintiff's rights under ERISA. *Id.* at *4. Moreover, "[i]f such claims were held to be preempted by ERISA, [plaintiff] would be subject to such treatment with no available recourse, and 'a plan administrator could investigate a claim in all manner of tortious ways with impunity.'" *Id.*

(quoting *Dishman*, 269 F.3d at 984).

Courts have also recognized other tort claims that are not preempted. *See Duran v. Cisco Sys., Inc.*, 2008 WL 4793486, at *4 (C.D. Cal. Oct. 27, 2008) (denying motion to dismiss negligence and breach of fiduciary duty claims for conduct that occurred during the defendants' administration of benefits plan, finding preemption "would immunize defendant from liability for alleged behavior-negligently allowing a third party to access plaintiff's personal information-that is only peripherally related to the administration of the plan. This is not a result envisioned by Congress." (citing *Dishman*, 269 F.3d at 984)); *McGill v. Pac. Bell Tel. Co.*, 2015 WL 6039267, at *7 (C.D. Cal. Oct. 15, 2015) (finding state law fraud claim was not preempted by ERISA because the plaintiff's claim did not require review of the ERISA plan at issue, and "[t]he legal implications of this alleged misrepresentation would exist whether or not the Plan was governed by ERISA."); *Scripps Health v. Schaller Anderson, LLC*, 2012 WL 2390760, at *1 (S.D. Cal. June 22, 2012) (finding state law claims, including negligence, were not preempted because they "do not address the employee benefit structure or the administration of benefits; they are not aimed at binding employers or plan administrators to particular practices, nor do they preclude uniform administrative practices; and they are not an alternative enforcement mechanism for employees to obtain benefits.").

Reviewing this persuasive authority and taking Plaintiff's pleading in the light most favorable to him, the Court finds his allegations involve harassing and oppressive conduct independent of the duties of administering an ERISA plan.  Although the conduct occurred in connection with Plaintiff's claim, Plaintiff alleges Defendant engaged in such tortious conduct as falsely accusing him of 'lying about and exaggerating" his disability and intimidating him into attending multiple IMEs that Defendant knew would cause him pain and emotional distress. Compl. ¶ 25.  If such claims were held to be preempted by ERISA, Plaintiff would be subject to such treatment with no available recourse, and a plan administrator could investigate a claim in all manner of tortious ways with impunity.  *See Dishman*, 269 F.3d at 984.

Defendant argues Plaintiff's claim is preempted because it "is an ill-disguised attempt to evade ERISA preemption by affixing a state law label to what is obviously an ERISA case." Mot.

9

at 1.  Defendant cites *Bast v. Prudential Insurance Company of America*, 150 F.3d 1003 (9th Cir. 1998), to support this proposition.  There, the surviving family of a woman insured by an ERISA health plan brought claims against the plan administrator for breach of contract, loss of consortium, loss of income, emotional distress, breach of the duty of good faith and fair dealing, and violation of the Washington Consumer Protection Act in connection with the insurer's denial of benefits to the deceased.  *Id.* at 1005-08.  The Court held the plaintiffs' claims were preempted because they arose from the defendant's alleged bad faith in failing to timely pay benefits, and the defendant's "alleged breach of fiduciary duty while administering the benefit plan" was conduct covered by ERISA.  *Id.* at 1007-08.  Here, there are no allegations regarding Defendant's breach of fiduciary duty in administering the Plan or whether Plaintiff's benefits have been approved or denied—Plaintiff's IIED claim stems from independent harassing and oppressive conduct allegations.  This claim is wholly independent of any duty or legal remedy under ERISA.

Defendant also cites *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124 (9th Cir. 1992). In that case, an employee of Pixley fathered a child born with birth defects.  *Id.* at 1127.  Pixley initially paid all benefits due under the employee's insurance plan, but after it fired him without explanation, it refused to allow him to convert the plan into a direct payment-based plan.  *Id.* Plaintiff and his family filed suit against Pixley and his insurance company, including a claim for IIED against Pixley for terminating him in order to deny benefits.  *Id.* at 1128, 1131.  The Ninth Circuit dismissed all of plaintiffs' claims, including the IIED claim, with leave to amend under ERISA.  *Id.* at 1131.  As to the IIED claim, the court found that although it "appear[ed] to concern Mr. Tingey's employment relationship rather than his employee benefit plan, [it] spring[s] from the handling and disposition of Tingey's medical benefits insurance claim and [is] thus [] subject to preemption."  *Id.* at 1131.  However, the court noted that if the employee alleged another theory, such as that he was fired because his employer did not want to pay his benefits, such allegations "would not relate to ERISA and would therefore not be preempted."  *Id.*  In contrast, Plaintiff's IIED claim stems not from the handling and disposition of his claim, but from independent allegations of harassment and oppressive conduct.  There is no alternative enforcement mechanism under ERISA by which Plaintiff could bring such a claim.

United States District Court
Northern District of California

10

Defendant also cites two out-of-district cases that are similarly distinguishable.  In *Mullins v. Nevada Cancer Institute*, 2011 WL 5190808 (D. Nev. Oct. 28, 2011), the plaintiff asserted an IIED claim arguing that the Cancer Institute intended to cause her emotional distress by depriving her of benefits to cover her cancer treatment.  *Id.* at *2.  The court held the claim was preempted because the benefits played "a central role and the deprivation of such is the principal harm."  *Id.* Here, Plaintiff's IIED claim is not based on the denial of benefits; instead, he seeks damages from Defendant's harassing and oppressive conduct that existed wholly independent of whether or not he was denied benefits.  *Mullins* is thus inapposite.

In *Daleidan v. DuPage Internal Medicine, Ltd.*, 2002 WL 1858790 (N.D. Ill. Aug. 13, 2002), the plaintiff brought two claims, one under ERISA and one for IIED, relating to her alleged wrongful discharge.  *Id.* at *1.  The court found ERISA preempted the IIED claim because she "inexorably connected" the IIED and ERISA claims.  *Id.* at *2.  The court noted plaintiff's allegations that the defendant knew there was a high probability that terminating her while trying to pay a $10,000.00 hospital bill would inflict severe emotional distress, and that the defendant fired her in order to avoid liability for failing to provide medical insurance.  *Id.*  Once again, Plaintiff in this case seeks damages from Defendant's alleged harassing and oppressive conduct that existed wholly independent of the Plan.  Plaintiff does not bring an ERISA cause of action and his IIED claim does not depend on whether or not he was denied benefits.  Accordingly, *Daleidan* is also distinguishable.

In sum, because Plaintiff's IIED claim appears to be only tangentially related to the administration of the Plan, a finding of preemption is not warranted.

## CONCLUSION

Based on the analysis above, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings.

**IT IS SO ORDERED.**

Dated: April 4, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California